# United States Court of Appeals
## For the First Circuit

Nos. 20-1514,
     20-1735

JOSÉ M. ROJAS-TAPIA,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]
[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Aframe, Circuit Judges.

    Robert Fitzgerald, Assistant Federal Public Defender with
whom Rachel Brill, Federal Public Defender, District of Puerto
Rico, Héctor L. Ramos-Vega, Interim Federal Public Defender,
District of Puerto Rico, Franco L. Pérez-Redondo, Assistant
Federal Public Defender, Supervisor, Appeals Division, and Kevin
E. Lerman, Research and Writing Attorney, were on brief, for
Appellant.
    Joshua K. Handell, with whom W. Stephen Muldrow, United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, and Thomas F. Klumper,
Assistant United States Attorney, Senior Appellate Counsel, were
on brief, for Appellee.

March 3, 2025

**BARRON**, **Chief Judge**.  José M. Rojas-Tapia appeals the denial of his 28 U.S.C. § 2255 petitions for post-conviction relief, which he filed in the District of Puerto Rico.  The first petition challenges his convictions under 18 U.S.C. § 924(c), while the second petition challenges the application of the Armed Career Criminal Act ("ACCA") to his sentences for his two convictions under 18 U.S.C. § 922(g).  We affirm.

### I.

### A.

Rojas's convictions and sentences stem from his October 2000 guilty pleas to charges set forth in two indictments that were handed up in the District Court of Puerto Rico in December 1999 and March 2000.  The first indictment contained six counts, each of which pertained to Rojas's alleged participation in a robbery of what his plea agreement referred to as the Levittown Post Office.  The second indictment contained five counts, each of which pertained to Rojas's alleged participation in a robbery of what his plea agreement referred to as the Sabana Seca Post Office.

As relevant here, the first indictment charged Rojas with one count of "aiding and abetting" an assault of employees of the Levittown Postal Service with the intent to rob them of U.S. currency and other property of the United States, and in so doing, placing those employees' lives in jeopardy by the use of dangerous weapons.  The count alleged that this conduct was in violation of

the federal mail robbery statute, 18 U.S.C. § 2114(a), and 18 U.S.C. § 2, which states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal," 18 U.S.C. § 2(a).

Rojas was also charged in this indictment with two counts of violating § 924(c), which criminalizes the carrying or use of a firearm during a "crime of violence." 18 U.S.C. § 924(c). These counts identified the Levittown robbery alleged in Count One as the predicate "crime of violence."

Also relevant to this appeal is the fourth count of this indictment, which charged Rojas with violating § 922(g) by (during the federal mail robbery alleged in Count One) possessing a firearm. Section 922(g) provides, as relevant here, that it shall be unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g).[1]

The second indictment charged Rojas with one count of "aiding and abetting" an assault of employees of the Sabana Seca Post Office with the intent to rob them of U.S. currency and other

---

[1] The other counts in this indictment are not relevant to this appeal. They charged Rojas with, during the course of the robbery, possessing a firearm in a federal facility and attempting to kill a police officer, in violation of 18 U.S.C. §§ 930(b)-(c) and 2.

property of the United States, and in so doing, putting those employees' lives in jeopardy by the use of dangerous weapons. Here, too, the charge alleged that Rojas had engaged in the conduct in violation of 18 U.S.C. § 2114(a) and 18 U.S.C. § 2. In addition, Rojas was charged in this indictment with two counts of using or carrying a firearm during the robbery, in violation of § 924(c). Each of the § 924(c) counts identified the predicate "crime of violence" as the Sabana Seca robbery charged in Count One of that same indictment. And, as relevant to this appeal, Rojas also was charged in this indictment with one count of violating § 922(g), based on his having been in possession of a firearm during the Sabana Seca robbery while having previously committed three felonies.[2]

**B.**

Rojas pleaded guilty to the six counts related to the alleged robbery of the Levittown Post Office and the five counts related to the alleged robbery of the Sabana Seca Post Office. The resulting eleven convictions stemming from the two indictments were then consolidated for purposes of sentencing. At sentencing, Rojas received concurrent sentences for the convictions on the counts contained in the two indictments that were based on the

---

[2] This indictment also charged Rojas with one count not relevant to his appeal, which was for possessing a firearm in a federal facility during the robbery, in violation of 18 U.S.C. §§ 930(b) and 2.

same statutory sections.  But Rojas successfully appealed his sentences for his convictions and was resentenced on January 19, 2005.  At his resentencing, he received a combined prison sentence of 262 months for all his convictions other than his § 924(c) convictions.  He also received a combined, consecutive 420-month prison sentence for his § 924(c) convictions.  Thus, in total, he received a prison sentence of 682 months.

In being sentenced for his § 922(g) convictions, Rojas was subjected to § 924(e) of the ACCA.  The ACCA provides that an individual convicted under § 922(g) who also "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be fined under this title and imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).  The definition of "violent felony" for the purposes of the ACCA encompasses offenses that are covered by its force clause, which reaches a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i).  The definition also encompasses crimes that "involve[] use of explosives," a list of enumerated offenses ("burglary, arson, or extortion"), and crimes that would constitute "violent felon[ies]" under the residual clause.  Id. § 924(e)(2)(B)(ii).  That latter clause defines a "violent felony" to include felonies that "otherwise involve[] conduct that

presents a serious potential risk of physical injury to another."
Id.  The decision to subject Rojas to the enhanced sentence under
ACCA was based on his having three prior felonies at the time of
his possession of the firearm in question.

### c.

Rojas did not challenge any of his convictions on direct
appeal.  Nor did he file a direct appeal from the sentences that
he received when he was re-sentenced.  In 2017, however, he filed
the two habeas petitions in the District of Puerto Rico under 28
U.S.C. § 2255 that are before us in this appeal and that take aim
at many of those convictions as well as his sentences.

One petition challenged the § 924(c) convictions and
ACCA-based sentence stemming from the robbery of the Levittown
Postal Service employees ("Levittown Petition").  The other
petition challenged the § 924(c) convictions and ACCA-based
sentence stemming from the robbery of the Sabana Seca Postal
Service employees ("Sabana Seca Petition").

Judge Daniel R. Domínguez was assigned to the Levittown
Petition, while Judge Juan M. Pérez-Giménez was assigned to the
Sabana Seca Petition.  In each petition, Rojas argued that, under
Johnson v. United States, 576 U.S. 591 (2015) (Johnson II), his
§ 924(c) convictions could not stand, because his statutory
offense of conviction for aiding and abetting the violation of
§ 2114(a) does not qualify as a "crime of violence."

Section 924(c) defines a "crime of violence" to include any felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," id. § 924(c)(3)(A), although the Supreme Court of the United States has clarified that this force must be "violent force capable of causing physical pain or injury." United States v. Faust, 853 F.3d 39, 50-51 (1st Cir. 2017) (citing Johnson v. United States, 559 U.S. 133, 140 (2010) (Johnson I)).  In addition, the definition of a "crime of violence" for purposes of § 924(c) has a residual clause, which defines as a "crime of violence" any felony "that by its nature[] involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).

In contending that his § 924(c) convictions must be overturned under Johnson II, Rojas pointed out that the Supreme Court held in that case that the residual clause of the ACCA's definition of a "violent felony," which defined such an offense to include "any felony that 'involves conduct that presents a serious potential risk of physical injury to another,'" was unconstitutionally vague.  576 U.S. at 593 (quoting 18 U.S.C. § 924(e)(2)(B)).  Rojas argued that Johnson II's logic extended to the parallel residual clause in § 924(c), notwithstanding that § 924(c)'s residual clause defines what qualifies as a "crime of

violence" rather than what qualifies as a "violent felony."  Rojas thus contended based on Johnson II that a predicate offense for a § 924(c) conviction would qualify as a "crime of violence" only if it were encompassed by § 924(c)'s force clause.  He then further argued that § 924(c)'s force clause encompassed neither of the federal mail robbery offenses of which he had been convicted, notwithstanding that each of his convictions for those offenses was alleged to be the respective "crime of violence" for each of his § 924(c) convictions.

In addition to challenging his § 924(c) convictions based on Johnson II, Rojas's petitions also challenged his sentences for his convictions under § 922(g) on the ground that, given Johnson II, the sentences had been improperly enhanced based on the ACCA.  Rojas rested his petitions as to those sentences on the ground that he had not previously been convicted of three predicate "violent felonies" or "serious drug offenses," given that Johnson II had rendered unconstitutional the residual clause of the ACCA's definition of a violent felony.  Rojas argued in this regard that his predicate convictions under Puerto Rico law for robbery, robbery of a vehicle, kidnapping, escape, murder, and attempted murder no longer qualified as violent felonies because they did not meet the stringent requirements of the ACCA's force clause.

Each of Rojas's § 2255 petitions for habeas relief was denied in a separate order, which was accompanied by a separate opinion. The analysis in each of these opinions, however, was quite similar.

Each opinion noted that, while the habeas petition at issue was pending, the Supreme Court had held in United States v. Davis, 588 U.S. 445 (2019), that the logic of Johnson II extended to the definition of "crime of violence" that applies to § 924(c). Nonetheless, each opinion concluded that the federal mail robbery offense underlying the § 924(c) convictions at issue in the relevant habeas petition qualified as a "crime of violence" under the force clause of the definition of a "crime of violence" for purposes of § 924(c).

As to the claims set forth in each petition that concerned the relevant ACCA-enhanced sentence, Judge Domínguez, who heard the Levittown Petition, explained that, under United States v. Báez-Martinez, 950 F.3d 119 (1st Cir. 2020), Rojas's prior convictions for attempted murder and second-degree murder under Puerto Rico law both qualified as "violent felon[ies]" under the force clause of the ACCA's definition of a "violent felony." Judge Pérez-Giménez, who heard the Sabana Seca Petition, reached the same conclusion based on a previous District of Puerto Rico opinion that he had written.

The judges each also ruled that Rojas's convictions for armed carjacking under Puerto Rico law qualified as convictions for "violent felon[ies]" under the force clause of the ACCA's definition of a "violent felony."  The judges then each also held that those predicate Puerto Rico law convictions -- in conjunction with Rojas's previous conviction for a "serious drug offense" -- supported his ACCA-enhanced sentence.

In their respective orders denying Rojas's petitions, each judge expressly declined to issue a Certificate of Appealability ("COA") on any of Rojas's claims.  Rojas nonetheless appealed the denials of his request for a COA to this Court, and the appeals were consolidated.  Rojas then filed a single request for a COA on each of the claims that he presented below in his two petitions.  This Court granted the request with respect to his claims that his § 924(c) convictions cannot stand under Davis and Johnson II because his convictions for federal mail robbery under § 2114(a) do not qualify as convictions for a "crime of violence."  However, this Court denied his request for a COA with respect to his remaining claims.

## II.

"When reviewing a district court's denial of a § 2255 petition, we review the district court's legal conclusions de novo and any factual findings for clear error."  Lassend v. United States, 898 F.3d 115, 122 (1st Cir. 2018).  "The determination of

whether a prior conviction qualifies as a predicate offense . . . is a legal question subject to de novo review." United States v. Pakala, 568 F.3d 47, 54 (1st Cir. 2009) (emphasis omitted).  As to the question of what offense the defendant was convicted of committing, Rojas seems to contend that this question, too, is a legal question and thus one that is subject to de novo review.  This argument is foreclosed, however, by the Supreme Court's decision in Pereida v. Wilkinson, which held that the question of "what crime the defendant was convicted of committing," for the purposes of applying the categorical approach, see infra Section III, is "a question of fact."  592 U.S. 224, 238 (2021).

### III.

We start with Rojas's challenge to the denial of his petitions challenging his § 924(c) convictions.  Because of the Supreme Court's decision in Davis, this challenge has merit so long as Rojas can show that the predicate mail robbery conviction under § 2114(a) for each of his § 924(c) convictions was not for an offense that has "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3).  If he can make that showing, then he will have shown that the government has not proved that he used a firearm during the commission of a "crime of violence" with respect to the underlying § 924(c) charges.

To decide whether Rojas has made the required showing about his federal mail robbery convictions, we apply what is known as the "categorical approach." Mathis v. United States, 579 U.S. 500, 504 (2016). We thus must assess the elements of the offense that is claimed to qualify as the "crime of violence" for a defendant's § 924(c) conviction to see if those elements are encompassed within the force clause of § 924(c)'s definition of a "crime of violence." Id. (explaining that "the categorical approach" "focus[es] solely" on the elements of a crime, which, at a plea hearing, "are what the defendant necessarily admits when he pleads guilty"). In other words, we must focus on the elements of the claimed predicate offense rather than on the conduct that the defendant engaged in to commit that offense. See United States v. Taylor, 848 F.3d 476, 491 (1st Cir. 2017).

Here, the offense that is claimed to be the predicate "crime of violence" is the offense of federal mail robbery under § 2114(a), of which Rojas was convicted as an aider and abettor under 18 U.S.C. § 2. Accordingly, we must decide whether Rojas is right that neither of the federal mail robbery offenses under § 2114(a) to which he pleaded guilty has "as an element the use of force or threatened use of force," because, given Davis, if neither does, then neither of his convictions for those offenses can serve as the predicate conviction for a "crime of violence" under § 924(c). As we will explain, however, we conclude that Rojas is

- 13 -

not right on that score, because his convictions under § 2114(a) were for offenses that have such an element, at least given our existing precedent.

**A.**

Section 2114(a)[3] provides as follows:

> (a) Assault.--A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a).

The parties agree that § 2114(a) does not set forth a single offense, as they agree that it is divisible into the separate offenses of simple mail robbery and aggravated mail robbery. See Taylor, 848 F.3d at 492 (explaining that statutes which list multiple elements in the alternative are "divisible"

---

[3] Section 2114 contains a second provision, subsection (b), criminalizing "[r]eceipt, possession, concealment, or disposal of property" obtained in violation of § 2114(a). 18 U.S.C. § 2114(b). Though Rojas's plea agreement and indictments only identify his predicates as violations of § 2114 without specifying a particular subsection of that statute, neither party contends that subsection (b) formed the basis of Rojas's § 924(c) convictions.

into separate offenses under the categorical approach, meaning that some forms of the offense may have as an element the requisite force while other forms of the offense may not). The parties further agree that the elements of the offense (or potentially, offenses) of simple mail robbery under § 2114(a) are set forth before the semicolon in the text quoted above. And the parties agree that the portion of the text following the semicolon that refers to wounding or placing a postal worker's life in jeopardy by the use of a dangerous weapon does not describe the offense of "simple mail robbery" but instead sets forth the separate offense of aggravated mail robbery. However, in the government's view, the text following the semicolon in § 2114(a) sets forth a "wounding" offense of aggravated mail robbery that is a separate and distinct offense from the "placing life in jeopardy" offense of aggravated mail robbery. Moreover, the government further contends that the text following the semicolon that describes the repeated commission of simple mail robbery sets forth a sentencing factor rather than a distinct offense in its own right.

The parties therefore are in agreement that the offense (or offenses) of simple mail robbery carries (or carry) a maximum sentence of ten years imprisonment and requires (or require) proof that the defendant "assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or

purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States." 18 U.S.C. § 2114(a). As a result of this shared understanding, the parties also agree that the simple mail robbery offense (or offenses) that § 2114(a) sets forth need not be proved by showing that the defendant, "in effecting or attempting to effect [a simple mail robbery]," "wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon." And the parties agree, too, that the offense or offenses of simple mail robbery need not be proved by showing that the defendant has committed "a subsequent [simple mail robbery]."

At this point, though, the parties' arguments begin to diverge in ways that are relevant to this appeal. We therefore turn to their points of disagreement.

**B.**

For starters, Rojas contends -- contrary to the government -- that it is not clear whether his conviction for each federal mail robbery offense under § 2114(a) was for an offense of simple mail robbery under that provision or for an offense of aggravated mail robbery under that provision. As a result, Rojas argues that we must proceed on the understanding that each of his convictions for federal mail robbery under § 2114(a) was for the

offense of simple mail robbery, which he contends the force clause in § 924(c)'s definition of a "crime of violence" does not encompass because the offense of simple mail robbery under § 2114(a) does not have as an element the requisite use of force. He thus contends that his petitions must be granted as to his § 924(c) convictions for this reason alone.

We agree with the government, however, that the record contradicts this assertion about the nature of his underlying § 2114(a) convictions. The record makes clear that Rojas pleaded guilty to two counts under § 2114(a) -- one in each separate indictment -- and that each count was for assaulting postal employees. Moreover, his plea agreements make clear that the maximum term of imprisonment Rojas faced for each of his § 2114(a) convictions was twenty-five years. Given that the offense of simple mail robbery for which, in making this argument, Rojas contends he was convicted carries a maximum penalty of ten years in prison, it is clear that Rojas's predicate mail robbery offenses under § 2114(a) were necessarily grounded in the text of § 2114(a) that follows the semicolon in that statute, rather than any offense of simple robbery that is set forth before the semicolon.[4]

---

[4] Insofar as Rojas appears to contend in his reply brief that it is not clear whether the predicate crimes of violence underlying his § 924(c) convictions -- "to wit: assaulting employees of the [Levittown and Sabana Seca] Postal Service[s]" -- are the § 2114(a) convictions to which he also pleaded guilty, that argument is waived. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d

**c.**

We also see no merit in Rojas's fallback ground for challenging his § 924(c) convictions. Here, he contends that aggravated mail robbery is a single offense that may be committed by various means, one of which is by repeatedly committing simple mail robbery. And, he further contends, the repeated commission of simple mail robbery does not require force as defined by § 924(c)'s force clause. Thus, Rojas argues that his § 924(c) convictions cannot stand even if he had been convicted of aggravated rather than simple mail robbery under § 2114(a), because even aggravated mail robbery does not qualify as a "crime of violence" after Davis. But, even accepting Rojas's contention that simple mail robbery is not a "crime of violence," this ground for challenge still fails, because it rests on the mistaken premise that aggravated mail robbery under § 2114(a) is a single offense, of which the repeated commission of simple mail robbery is but one means of committing it.

As the Supreme Court has explained, for a statute's alternatively listed items to be means of committing a single offense, rather than elements that specify distinct offenses, the alternatives must "enumerate[] various factual means of committing

---

25, 29 (1st Cir. 2015) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief.").

a single element." Mathis, 579 U.S. at 506. For example, a statute that has as an element the use of a "dangerous weapon" might also list a "knife, gun, bat, or similar weapon" as factual means illustrating "diverse means of satisfying [that] single element . . . ." See id. So, too, might a statute list "any building, structure, [or] land, water, or air vehicle" as factual means of satisfying a single "locational element." See id. at 507 (alteration in original) (emphasis omitted) (first quoting Iowa Code § 702.12 (2013)); see also id. at 518 (citing favorably to United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014), for its holding that a statute that listed "any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein" and "any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof" merely provided "non-exhaustive examples of items that qualify as a 'structure' and thus count as a 'building'" for the purpose of defining the element of "building" in an Alabama burglary statute).

In arguing that the repeated commission of simple mail robbery is just a means of committing aggravated mail robbery -- and so not a distinct offense in its own right -- Rojas points out that this Court has never expressly held that a jury would have to find that a defendant wounded a mail carrier, as opposed to placing that mail carrier's life in jeopardy, or vice versa, to convict that defendant for aggravated mail robbery. Cf.

id. at 504, 506 (holding that, "[a]t a trial" elements are "what
the jury must find beyond a reasonable doubt to convict," but that,
when a statutory list "merely specifies diverse means of satisfying
a single element," a jury need not unanimously agree on which means
the defendant used to commit that element).  He also notes that
§ 2114(a) does not establish distinct punishments for the three
alternatives listed following § 2114(a)'s semicolon -- wounding,
placing a victim's life in jeopardy, and repeatedly committing
simple mail robbery.  Cf. id. at 518 ("If statutory alternatives
carry different punishments, then under Apprendi[ v. New Jersey,
530 U.S. 466 (2000)] they must be elements.").  Finally, he
contends that the relevant documents in the proceedings below do
not identify any of the three alternatives to the exclusion of the
others.  Cf. id. at 519 ("[A]n indictment and jury instructions
could indicate, by referencing one alternative term to the
exclusion of all others, that the statute contains a list of
elements.").

      We agree, however, with the government -- and all other
circuits to have addressed the issue -- that § 2114(a) does not
set forth the offense of aggravated mail robbery as a single
offense with means that include the repeated commission of simple
mail robbery.  See, e.g., United States v. Buck, 23 F.4th 919, 925
(9th Cir. 2022); Pannell v. United States, 115 F.4th 154, 160-61
(2d Cir. 2024).  Notably, each of the examples that the Supreme

Court has given for when alternatives in a criminal statute are merely means of committing the offense rather than distinct offenses is an example that sets forth an element specifying a type of conduct and then factual means of carrying out that conduct.  However, there is no single element referenced in § 2114(a) of which "wound[ing]," "put[ting] [a mail carrier's] life in jeopardy by the use of a dangerous weapon," and committing "a subsequent [simple mail robbery] offense," 18 U.S.C. § 2114(a), would be just means.

In that respect, § 2114(a) is like the provision that was at issue in United States v. McCants, 952 F.3d 416, 426 (3d Cir. 2020).  There, the Third Circuit rejected a similar argument that a set of statutory alternatives were means, rather than elements.  In doing so, the Third Circuit explained that the argument failed because the statute in question "state[d] no overarching genus of which [the alternatives] [were] species." Id.

Rojas's counsel at oral argument did contend that the alternatives of wounding, placing a life in jeopardy, and repeatedly committing the offense of simple mail robbery is each properly understood to identify a means of satisfying the single element of "enhanced culpability."  But this purported element does not appear in the text of § 2114(a).  And, while the assertedly indivisible statute in Chambers v. United States, 555

U.S. 122, 126 (2009) also lacked any named element to which the asserted listed means were claimed to relate, the Court there considered the similarity (or dissimilarity) of the behavior described by each asserted alternative means in order to determine whether the asserted alternative means were "variations on a single theme . . . together constituting a single category" and so a single offense, or were too dissimilar from one another to support the conclusion that they were alternative means of committing a single offense rather than separate offenses.

That same logic applies here and reinforces the conclusion that it does not make sense to read an implied umbrella element of "enhanced culpability" into § 2114(a). The behaviors described in the listed alternatives here -- at least when comparing committing simple mail robbery twice to wounding a victim or using a dangerous weapon to place a mail worker's life in jeopardy -- are, like the alternatives in Chambers, materially different in nature and in the types of risk each poses. Cf. United States v. Allred, 942 F.3d 641, 650 (4th Cir. 2019) ("Put simply, the behavior typically underlying the causation of bodily injury 'differs so significantly' from that underlying damage to property that those statutory phrases cannot plausibly be considered alternative means." (quoting Chambers, 555 U.S. at 126)).

Further, this conclusion comports with the structure of § 2114(a).  Unlike the examples provided by the Supreme Court in Mathis, the alternatives listed in the statute at issue here are each separated by the disjunctive "or," 18 U.S.C. § 2114(a), which supports the notion that each alternative stands on its own rather than as an illustration of an "overarching genus."  See McCants, 952 F.3d at 426.

Finally, although the First Circuit has not issued model jury instructions on § 2114(a), the two circuits to have done so both identify wounding and placing a victim's life in jeopardy by use of a dangerous weapon as elements that must be proven to a jury beyond a reasonable doubt, without identifying the recidivist provision in a similar way.  See Pattern Crim. Jury Instr. 7th Cir. § 2114(a) at 870 (2023 ed.); Pattern Crim. Jury Instr. 11th Cir. O77 (2024); see also United States v. Bain, 874 F.3d 1, 30 (1st Cir. 2017) ("There are a number of different ways of distinguishing elements from means, including looking at . . . relevant model jury instructions . . . .").  Moreover, contrary to Rojas's contention that the indictment and the plea agreement do not "speak plainly" on the question of divisibility, the two indictments under which Rojas was charged allege that Rojas committed simple mail robbery, "and while committing said offense, did put [postal workers'] lives in jeopardy by the use of dangerous weapons."  And his plea agreements then use the same language,

- 23 -

thereby making it clear that the prosecutors in Rojas's case did "referenc[e] one alternative term to the exclusion" of the other two provisions -- namely, recidivating or wounding a postal carrier.  <u>Mathis</u>, 579 U.S. at 519.

Thus, we reject Rojas's argument that the alternatives listed after the semicolon in § 2114(a) -- wounding a mail carrier, placing their life in jeopardy by use of a dangerous weapon, and recidivating -- are merely means of committing a single, indivisible offense of aggravated mail robbery.[5]

**D.**

This last point also suffices to resolve any arguable dispute between the parties over whether the District Court documents "speak plainly" as to which variant of the offense of aggravated mail robbery formed Rojas's predicate offenses.  It is clear that each of Rojas's convictions for federal mail robbery under § 2114(a) was based on his having pleaded guilty to the offense of aggravated mail robbery through putting the lives of postal employees in jeopardy by the use of dangerous weapons while

---

[5] Given our reasons for rejecting Rojas's contention that the language beyond the semicolon sets forth alternative means of committing a single, indivisible offense, we need not decide here whether the portion of that language concerning the repeated commission of simple mail robbery constitutes a separate offense or a mere sentencing factor, or whether the language concerning wounding and placing a postal worker's life in jeopardy constitutes a single, indivisible aggravated mail robbery offense, or two distinct such offenses.

committing a simple mail robbery.  As such, we do not disturb any of the factual findings on that score that were made below, and so proceed on the understanding that Rojas was convicted only of a variant of aggravated mail robbery that does not implicate the language in § 2114(a) that concerns the repeated commission of simple mail robbery.[6]

Moreover, Rojas does not dispute that the offense of aggravated mail robbery -- if not susceptible of being committed by means of repeatedly committing simple mail robbery -- qualifies as a "crime of violence" under the force clause of § 924(c)'s definition of a "crime of violence."  And he fails to do so, notwithstanding that each of the judges below held that such an offense can so qualify in denying his respective petitions and that all our sister circuits to have addressed the question thus far have reached the same conclusion as the judges below did here. See Pannell, 115 F.4th at 162; United States v. Bryant, 949 F.3d 168, 180 (4th Cir. 2020); United States v. Castro, 30 F.4th 240, 248 (5th Cir. 2022); Knight v. United States, 936 F.3d 495, 501

---

[6] Because we hold that Rojas was convicted of aggravated § 2114(a) mail robbery due to his having placed in jeopardy, by the use of a dangerous weapon, the lives of the postal service employees, we need not address Rojas's argument that a recidivist version of aggravated mail robbery would not be a crime of violence, nor do we address his closely related argument that simple mail robbery is not a crime of violence.  For the same reason, we do not pass on the parties' arguments as to whether simple mail robbery under § 2114(a) is further divisible into separate offenses.

(6th Cir. 2019); <u>United States</u> v. <u>Enoch</u>, 865 F.3d 575, 580 (7th Cir. 2017); <u>Buck</u>, 23 F.4th at 928.  Thus, any such contention is waived.  <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

**E.**

Accordingly, we need only address Rojas's final ground for contending that, under <u>Johnson II</u>, his federal mail robbery convictions under § 2114(a) were not for an offense that qualifies as a "crime of violence" under § 924(c), such that his convictions cannot stand.  This contention rests on the fact that, in his view, he was convicted of committing aggravated mail robbery as an aider and abettor rather than as a principal, as he contends that the force clause of § 924(c)'s definition of a "crime of violence" does not encompass the offense of aggravated mail robbery under § 2114(a) when it is premised on aiding and abetting the commission of that offense.  And that is so, he contends, even if the offense of aggravated mail robbery under § 2114(a) does not have as a means of committing it the repeated commission of simple mail robbery under that provision.[7]

---

[7] Because we hold in the government's favor on this issue, we need not address the government's argument that the question of accomplice liability was not fairly raised in Rojas's application for a COA.  <u>See</u> <u>Doe</u> v. <u>Town of Lisbon</u>, 78 F.4th 38, 44-45 (1st Cir. 2023) (holding that, when a case poses a question of statutory, rather than Article III, jurisdiction, "the question of jurisdiction need not be resolved if a decision on the merits will favor the party challenging the court's jurisdiction" (citation

In addressing this last aspect of Rojas's challenge to his § 924(c) convictions, we are not writing on a blank slate. As noted above, 18 U.S.C. § 2 states that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  Our precedent makes clear, however, that this provision does not create a separate offense of aiding and abetting a federal crime.  Rather, it identifies a theory of liability for the commission of every federal offense to which § 2 applies.  See United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990) (holding that aiding and abetting under § 2 "is not a separate offense" from the underlying substantive offense itself); see also id. (holding that the government need not refer to § 2 in charging documents when it wants to pursue an aiding-and-abetting theory); Almendarez-Torres v. United States, 523 U.S. 224, 226 (1998) ("[I]f [a statutory provision] constitutes a separate crime, then the Government must write an indictment that mentions the [separate crime's] additional element[s] . . . .").

---

and internal quotation marks omitted)); 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255."). We also need not address the government's argument that Rojas was in fact convicted as a principal, rather than an accomplice, because for the reasons we explain, that distinction makes no difference under our precedent for purposes of determining whether the offense qualifies as a "crime of violence" under § 924(c).

Moreover, against that backdrop, we held in Lassend that whether a defendant is convicted of a predicate "crime of violence" as a principal or an accomplice makes no difference under the categorical approach. 898 F.3d at 130 ("[The definition of a predicate offense of conviction] focuses on the elements of the crime of conviction, not on the particular act committed by the defendant or the circumstances of his conviction. What matters for the force clause, then, is whether a felony's legal definition involves violent force, not whether a particular individual actually employed or intended to employ violent force in committing that felony."). We reaffirmed that holding in United States v. García-Ortiz, 904 F.3d 102 (1st Cir. 2018), stating that 18 U.S.C. § 2 "makes an aider and abettor 'punishable as a principal,' and thus no different for purposes of the categorical approach than one who commits the substantive offense" by his own hand. Id. at 109 (quoting 18 U.S.C. § 2).

This approach also accords with the approach taken by every sister circuit to date. See, e.g., Medunjanin v. United States, 99 F.4th 129, 135 (2d Cir. 2024) (per curiam); United States v. Stevens, 70 F.4th 653, 662 (3d Cir. 2023); United States v. Draven, 77 F.4th 307, 316-18 (4th Cir. 2023); United States v. Hill, 63 F.4th 335, 363 (5th Cir. 2023); Nicholson v. United States, 78 F.4th 870, 880 (6th Cir. 2023); United States v. Worthen, 60 F.4th 1066, 1069-70 (7th Cir. 2023); Kidd v. United

States, 929 F.3d 578, 581 (8th Cir. 2019) (per curiam); United States v. Eckford, 77 F.4th 1228, 1236-37 (9th Cir. 2023); United States v. Deiter, 890 F.3d 1203, 1214-16 (10th Cir. 2018); United States v. Wiley, 78 F.4th 1355, 1363-65 (11th Cir. 2023); United States v. Smith, 104 F.4th 314, 323 (D.C. Cir. 2024). Indeed, at least one of our sister circuits -- in rejecting a similar argument -- has stated that, if we adopted the position Rojas asks us to take today, no federal crime could qualify as a predicate under the force clause, because any federal conviction can rest on accomplice liability, whether or not a guilty plea or jury instructions make that basis explicit. See Worthen, 60 F.4th at 1070-71; Sanchez, 917 F.2d at 611; see also United States v. Cammorto, 859 F.3d 311, 316 (4th Cir. 2017) (rejecting an argument on the grounds that it would "mean that no federal offense could be treated as a predicate offense for purposes of [the] ACCA, the Sentencing Guidelines, the Immigration and Nationality Act, or any other statute under which courts use the categorical approach."); cf. Voisine v. United States, 579 U.S. 686, 695-96 (2016) (declining to read a statutory provision under the categorical approach such that it would not have been operative in more than half of the country at the time of passage).

Rojas offers no response to this last concern about the practical consequences of our adopting his position. Nor does he dispute that Lassend and García-Ortiz rejected the aiding and

abetting-based theory for why an offense does not qualify as a "crime of violence" that he raises today, or that, as the government notes, a rule of law announced by a panel of this Court is generally binding on subsequent panels. See United States v. Whindleton, 797 F.3d 105, 113 (1st Cir. 2015). Nonetheless, he points out that we have recognized a narrow exception to this general rule under the law-of-the-circuit doctrine when "[a]n existing panel decision [is] undermined by controlling authority, subsequently announced, such as an opinion of the Supreme Court . . . ," id. at 113 (alterations in original) (quoting United States v. Rodriguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007)), or "when 'authority that postdates the original decision, although not directly controlling, . . . nevertheless offer[s] a compelling reason for believing that the former panel, in light of new developments, would change its collective mind,'" United States v. Guerrero, 19 F.4th 547, 550 (1st Cir. 2021) (alterations in original) (quoting United States v. Guzmán, 419 F.3d 27, 31 (1st Cir. 2005)). And he contends that the Supreme Court's recent decision in Taylor fits the bill.

To make this case, Rojas emphasizes the fact that Taylor expressly states that the focus of the categorical approach is on whether "the offense requires proof of the defendant's use of force or threatened use of force." See United States v. Taylor, 596 U.S. 845, 856 (2022) (emphasis added). Rojas then notes that under

Rosemond v. United States, 572 U.S. 65, 71 (2014), "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." Thus, he contends that it follows that a conviction for aiding and abetting a crime of violence does not require proof that the defendant himself used, attempted, or threatened to use force.[8]

In so arguing, Rojas concedes that Taylor concerned attempted Hobbs Act robbery and did not consider whether accomplice liability has any effect on the application of the categorical approach to the force clause in § 924(c)'s definition of a "crime of violence." See Taylor, 596 U.S. at 848. Rojas nonetheless contends that the Court's decision in Taylor was "the last in a relentless line of cases, starting with [the Court's first categorical approach case,] Taylor v. United States, 495 U.S. 575 (1990), eschewing a focus on anything but whether an offense

---

[8] Rojas premises his argument, in part, on the arguably lesser requirements for finding an accomplice liable under § 2 at the time of his conviction. See United States v. Evans-García, 322 F.3d 110, 114 (1st Cir. 2003) (holding an accomplice liable for a principal's actions if they merely "consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal") (citation omitted). As we will explain, the evidence required to convict a defendant for aiding and abetting a crime does not impact our analysis of accomplice liability under the categorical approach, so our analysis in this case holds for defendants convicted under § 2, regardless of whether their conviction occurred before or after Rosemond was decided.

requires a defendant attempt to use, use, or threaten to use violent force."

We recognize that "a good rule of thumb for reading [Supreme Court] decisions is that what they say and what they mean are one and the same . . . ." <u>Mathis</u>, 579 U.S. at 514. It is also true that some of the language in the more-recent <u>Taylor</u> opinion does appear, when read in isolation, to support Rojas's view. For example, the recent <u>Taylor</u> majority said the following: "[Section 924(c)(3)(A)] speaks of the 'use' or 'attempted use' of 'physical force against the person or property of another.' Plainly, this language requires the government to prove that <u>the defendant</u> took specific actions against specific persons or their property." <u>Taylor</u>, 596 U.S. at 856 (emphasis added) (quoting 18 U.S.C. § 924(c)(3)(A)).

We are also mindful of the Court's instruction, however, that "[t]he language of an opinion is not always to be parsed as though . . . dealing with language of a statute," and instead "must be read with a careful eye to context" in light of the discrete case or controversy to which the opinion was addressed. <u>Nat'l Pork Prods. Council</u> v. <u>Ross</u>, 598 U.S. 356, 373-74 (2023) (citation omitted). Considering <u>Taylor</u> with this admonition in

mind, we conclude that Taylor does not suffice to permit us to disregard our holdings in Lassend and García-Ortiz.

Taylor had no occasion to address the question of whether the defendant in committing the offense must have personally engaged in conduct that satisfied all the elements of attempted Hobbs Act robbery, rather than merely have aided and abetted the principal in engaging in such conduct. See 596 U.S. at 849-51. Instead, that case required the Court to address only the question of whether, to commit attempted Hobbs Act robbery, force needed to be used at all. See id. at 851. As a result, the Court had no reason to consider there whether the defendant might be deemed to have used the requisite force by virtue of having been an accomplice to an offense that, when committed by the principal, involves the use of such force. We thus have no basis for concluding that, in Taylor, the Court meant to make a significant statement about whether a conviction premised on an aiding and abetting theory of liability is encompassed by the force clause in § 924(c)'s definition of a "crime of violence."

We also are reluctant to conclude that the Court meant to do any such thing, given the legal backdrop against which the question of Taylor's import here arises. In that regard, we have held that 18 U.S.C. § 2 describes a theory of liability for committing an offense, rather than a distinct offense in its own right. See Sanchez, 917 F.2d at 611. Moreover, the text of

- 33 -

§ 924(c)'s force clause does not clearly compel the conclusion that it encompasses convictions for predicate offenses only when the defendant has been convicted of the predicate as a principal. Indeed, the force clause only requires that a qualifying offense "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  And a defendant who pleads guilty to a predicate as an accomplice admits that someone whom he aided or abetted committed every element of the predicate.  See United States v. Loder, 23 F.3d 586, 590 (1st Cir. 1994) ("In order to find a defendant guilty of aiding and abetting, the government must show . . . that the principal committed [every element of] the underlying substantive crime.").  Finally, every circuit to address this issue post-Taylor has similarly concluded that Taylor does not require the understanding of § 924(c)'s force clause that Rojas asks us to endorse.  See, e.g., Medunjanin, 99 F.4th at 134-36; Stevens, 70 F.4th at 662; Draven, 77 F.4th at 317-19; Hill, 63 F.4th at 363; Nicholson, 78 F.4th at 878-82; Worthen, 60 F.4th at 1069-70; Eckford, 77 F.4th at 1236-37; Wiley, 78 F.4th at 1363-65.

We therefore conclude that our decisions in Lassend and García-Ortiz remain binding on us as a panel.  Accordingly, we must reject Rojas's contention that his convictions for aggravated mail robbery as an accomplice do not qualify as convictions for

crimes of violence because his accomplice status rendered his predicates beyond the reach of § 924(c)'s force clause. As a result, we must reject this ground for challenging the District Courts' denials of his request for federal habeas relief as to his § 924(c) convictions.

## IV.

We address Rojas's final argument briefly. Here, he contends, as he did below, that his sentences for his convictions under § 922(g), which criminalizes being a felon in possession of a firearm, were improperly enhanced pursuant to the ACCA based on his prior Puerto Rico law convictions. Specifically, he argues that the sentence enhancement he received under 18 U.S.C. § 924(e)(1) and U.S.S.G. § 2k2.1(a)(1)(B) only applies to him if he had previously been convicted of some combination of three qualifying crimes of violence or serious drug offenses and he contends that he was not, because his past convictions do not include three such qualifying offenses.

As we already have noted, however, each of the judges below in denying his respective habeas petitions, as well as a prior panel of this court, denied Rojas's application for a COA on this issue. Because Rojas does not raise any new arguments that were not before that original panel, we see no reason to overturn that panel's decision. Accordingly, we decline to reach the merits of Rojas's arguments on this score. See Peralta v. United States,

597 F.3d 74, 83 (1st Cir. 2010) ("The general rule is that 'a court of appeals should not consider the merits of an issue advanced by a habeas petitioner unless a COA first has been obtained with respect to that issue.'" (emphasis omitted) (quoting <u>Bui</u> v. <u>DiPaolo</u>, 970 F.3d 232, 237 (1st Cir. 1999))).

## V.

For the foregoing reasons, the judgments are **<u>affirmed</u>**.